# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

CORTEZ COX,
an individual,

        Plaintiff,

v.

LOCKHEED MARTIN CORPORATION a/k/a
LOCKHEED MARTIN SPACE SYSTEMS COMPANY,
a Maryland Corporation,

        Defendant.

_____

## PLAINTIFF'S COMPLAINT AND JURY DEMAND
_____

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended; Title I of the Civil Rights Act of 1991; and 42 U.S.C. §1981; to correct unlawful employment practices on the basis of race, and retaliation to make whole Plaintiff Cortez Cox ("Cox" or "Plaintiff"), a former employee of the Defendant Lockheed Martin Corporation a/k/a Lockheed Martin Space Systems Company ("Lockheed Martin" or "Defendant-Employer").  Cox was subjected to race discrimination and retaliation.

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Section 102 of the Civil

Rights Act of 1991, 42 U.S.C. § 1981(a), and 42 U.S.C. § 1981.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

2. More than thirty days prior to the institution of this lawsuit, Cox filed a charge of discrimination with the Colorado Department of Civil Rights ("CCRD"), and the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by Defendant-Employer Lockheed Martin Corporation a/k/a Lockheed Martin Space Systems Company.

3. On or about December 2, 2010, Cox filed a charge of discrimination with the CCRD/EEOC, charge number 541-2011-00391, alleging unlawful employment practices occurring within three hundred days or less from the date of filing the charge. (See Attachment at A).

4. On or about January 4, 2011, Cox filed a charge of discrimination with the CCRD/EEOC, charge number 541-2011-00461, alleging unlawful employment practices occurring within three hundred days or less from the date of filing the charge. (See Attachment at A).

5. On or about March 11, 2011, Cox received Notices of Right to Sue on charge numbers 541-2011-00391 and 541-2011-00461.  (See Attachments at B).

## PARTIES

6. Plaintiff Cortez Cox is a Black African-American citizen of the United States of America, and at all relevant times alleged herein, resided at 15164 E. Wesley Avenue in

the city of Aurora, State of Colorado, 81014.  Cox was an employee of Defendant-Employer at all times relevant herein.

7.	At all relevant times, Defendant-Employer has continuously been a Maryland Corporation doing business in the State of Colorado and in the City of Denver.  At all relevant times, Defendant-Employer has employed at least fifteen (15) employees.

8.	At all relevant times, Lockheed Martin has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-(b), (g) and (h).

## STATEMENT OF CLAIMS

9.	On or about March 22, 1993, as part of a merger with LORAL Aerospace, Cox was hired by the Defendant-Employer as a full-time regular employee in the position of Quality Inspector.

10.	On or about July 2002, the Plaintiff was promoted to Quality Engineer.

11.	On or about December 2005, the Plaintiff was promoted to Senior Quality Engineer.

12.	From September 2007 through 2010, Cox was the only employee covering the ALTO Test/Mfg Center/Ground Mfg. /SVS and Ground Element Hardware Sections.

13.	Plaintiff Cox, at all relevant times, herein performed all his job duties in a satisfactory manner.

14.	On or about June 4, 2010, the Plaintiff was contacted by Evenly C. Burch an investigator from the Department of Security and Emergency Services, who told him

that she was investigating an internal complaint of harassment/hostile work environment filed by Mary Romero.

15. The Plaintiff told Evelyn Burch that he did not want to participate in the investigation because he feared retaliation.

16. At that time, Burch told the Plaintiff that the investigation was confidential and he did not have to fear retaliation. The Plaintiff declined to cooperate.

17. On or about July 24, 2010, the Plaintiff participated in a company sponsored dragon boat festival at Sloan's Lake.

18. Burch came to the festival, introduced herself to the Plaintiff, and again asked him to participate in the internal complaint filed by Romero.

19. On or about August 4, 2010, the Plaintiff agreed to and was interviewed by Evelyn C. Burch as part of the Romero internal EEO complaint.

20. During the interview with Burch, the Plaintiff made two statements of analogy regarding the affects of the treatment of his coworker Romero was enduring.

21. During the interview, the Plaintiff stated that "all metal has a breaking point, and that you can always recognize an "abused dog." The Plaintiff used these analogies only once in the context of the interview with Burch regarding the Romero investigation.

22. On or about September 24, 2010, the Plaintiff was given a Performance Improvement Plan (PIP).

23. The Plaintiff agreed to follow the PIP, but the Plaintiff refused to sign the PIP because he disagreed with contentions that he had any performance problems.

24.     On October 8, 2010, the Plaintiff was called into a meeting with management and the Human Resource Department; his badge was taken from him, and he was escorted off the premises.

25.     The Plaintiff was told that based upon the two statements: "all metal has a breaking point," and that you can recognize an "abused dog" that he must complete a violence risk assessment before he could return to work.

26.     The Plaintiff participated in the risk assessment and it was determined that he was not a risk treat to himself or to other coworkers.

27.     The risk assessment found that Plaintiff's behavior did create social and psychological disruptions in the workplace.

28.     On November 4, 2010, the Plaintiff received an email from the Human Resource Department, instructing him to report to the guard station.

29.     When the Plaintiff reported to the guard station he was given a revised Performance Improvement Plan (PIP).

30.     The revised PIP contained performance criteria that stated, in part, that Plaintiff must: treat all coworkers with respect; maintain an appropriate volume and tone of voice in the workplace; model appropriate behavior (sit down when other are sitting, face those speaking); respond and contribute to the conversation when asked in a meeting; do not show signs of anger (e.g. clenching your fist, raising your voice, interrupting others); refrain from indirect threats and inappropriate comments in the workplace (e.g. abused dog, metal have a breaking point).

31. Again, the Plaintiff agreed to perform those portions of the PIP addressing performance issues; however, because the Plaintiff considered some provisions in the PIP to be demeaning and inappropriate, the Plaintiff again declined to sign the PIP.

32. On November 5, 2010, the Plaintiff received an email from the Human Resource Department that the Company was going to conduct an investigation regarding his situation and that he would continue to be placed on leave with pay and benefits pending the investigation.

33. On December 3, 2010, the Plaintiff was notified that he was being terminated for insubordination.

34. Plaintiff asked if he was being terminated for refusing to sign the PIP, the Plaintiff was advised that he was insubordinate when he refused to sign the PIP.

## COUNT I-DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT

35. All prior allegations are incorporated by reference.

36. Plaintiff was performing all his duties in a satisfactory manner.

37. Defendant placed the Plaintiff on a PIP when the Defendant was not fully aware of all of Plaintiff's duties and accomplishment.

38. Similarly situated employees of a different race than the Plaintiff received satisfactory ratings and awards for job performance at a lower standard than the Plaintiff.

39. Defendant's actions were exercised with malice and reckless indifference towards Alfonso's federally protected rights.

40. Defendant knowingly and willfully engaged in illegal employment practices and policies that have discriminated against Cox because of race. Such practices violated Title VII of the Civil Rights Act, as amended, and 42 U,S.C.§§ 2000e *et seq.*

41. As a proximate result of Defendant-Employer's action Cox has suffered loss of career advancement opportunities, emotional and mental injury, loss of self-esteem and other injuries and loses.

## COUNT II-RETALIATION

42. All prior allegations are incorporated by reference.

43. On or about August 4, 2010, Plaintiff used an analogy during an interview in an internal complaint process that the Plaintiff believed was confidential.

44. On or about October 8, 2011, Plaintiff was removed from service and required to participate in a direct risk assessment.

45. Defendant used, in part, the two analogies made by the Plaintiff in the internal investigation as the bases for removing him for service and requiring a direct risk assessment.

46. After the Plaintiff completed the direct risk assessment and was found not to be a threat to himself or others the Plaintiff was presented an amended PIP that sought to monitor his office behavior. including how loud he spoke, for the remainder of his career.

47. Defendant's actions were exercised with malice and reckless indifference towards Cox's federally protected rights.

48. Defendant knowingly and willfully engaged in illegal employment practices and policies that have discriminated against Cox because of his race. Such practices violated Title VII of the Civil Rights Act, as amended, and 42 U,S.C.§§ 2000e *et seq.*

49. As a proximate result of Defendant-Employer's action Cox has suffered loss of career advancement opportunities, emotional and mental injury, loss of self-esteem and other injuries and loses.

## COUNT III-DISCHARGE RACE AND RETALIATION

50. All prior allegations are incorporated by reference.

51. On or about November 4, 2010, Plaintiff refused to sign his amended PIP because it contained demeaning provisions addressing conduct not performance.

52. During his employment, Plaintiff had never been disciplined by the Defendant Employer.

53. On November 5, 2010, Plaintiff was placed on leave with pay pending the outcome of an internal investigation.

54. Defendant did not conduct any investigation.

55. On December 3, 2010, Plaintiff was terminated for refusal to sign the amended PIP.

56. Employees of a different race than the Plaintiff have refused to sign a PIP and were not disciplined or discharged.

57. Defendant's actions were exercised with malice and reckless indifference towards Cox's federally protected rights.

58.     Defendant knowingly and willfully engaged in illegal employment practices and policies that have discriminated against Cox because of his race and his protected activities. Such practices violated Title VII of the Civil Rights Act, as amended, and 42 U,S.C.§§ 2000e *et seq.*

59.     As a proximate result of Defendant-Employer's action Cox has suffered loss of career advancement opportunities, emotional and mental injury, loss of self-esteem and other injuries and loses.

## A PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant-Employer, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and retaliation.

B.      Order Defendant-Employers to make whole Cox by providing back pay, reinstatement, or front pay in lieu of reinstatement, expungement of Plaintiff's personnel file of negative employment records, compensatory damages in amounts to be proved at trial, and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices.

C.      Order Defendant-Employers to pay Cox punitive damages for its malicious and reckless conduct described in paragraphs 9-59 above, in amounts to be determined at trial.