FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

November 20, 2013

Elisabeth A. Shumaker
Clerk of Court

CORTEZ COX,

    Plaintiff - Appellant,

v.

LOCKHEED MARTIN CORPORATION, a Maryland Corporation, also known as Lockheed Martin Space Systems Company,

    Defendant - Appellee.

No. 13-1038
(D.C. No. 1:11-CV-01479-PAB-BNB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

Cortez Cox appeals from a district-court order granting Lockheed Martin Corporation (LMC) summary judgment on his employment-discrimination claim. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

LMC hired Mr. Cox, an African-American, in 1993 as a quality inspector. He was later promoted to quality assurance senior engineer. Like other LMC employees, Mr. Cox was required to participate in an annual Performance Management Process (PMP), in which the employee enters his or her personal objectives for the year and "flow-down" objectives that originate with management. Aplt. App., Vol. I at 42. During the 2009 PMP, he entered as a personal objective that he would "remain current [with his] required training and complete [his] time card before the end of the week." *Id.* at 132. But in March 2009 he refused to enter any flow-down objectives, and when three such objectives were entered on his behalf, he requested that they be removed.

LMC also conducts an annual Performance Assessment and Development Review (PADR) for each employee. The 2009 PADR for Mr. Cox noted problems in his communication skills and his refusal to finalize the 2009 PMP:

> [Mr. Cox] continues to be difficult to communicate with and refuses to follow clearly communicated corporate command media requirements. Cortez has continually chosen, for the most part, to not be inclusive with his managers and peers . . . . For example[,] he refuses to attend any of the team's weekly staff meetings including when they have mandatory attendance . . . . Cortez's behavior associated with the [PMP] this year was unacceptable and in direct conflict with the Lockheed Martin performance attributes.

*Id.* at 137. At a meeting to discuss the PADR, Mr. Cox's managers warned him that if he failed to improve, he could be placed on a Personal Improvement Plan (PIP).

During the meeting Mr. Cox wore earphones to avoid hearing his managers' criticisms and he refused to sit down.

In March 2010, Mr. Cox received flow-down objectives to be included in his PMP, but he again declined to input them and inputted only his personal objectives. LMC continued to warn him that his failure to enter flow-down objectives could result in the issuance of a PIP. He responded in a May 2010 email, refusing to input his flow-down objectives. Also he explained that he did not attend more meetings because he felt harassed. He recounted a prior meeting at which he and a coworker were called "the bugs," and a manager seated at the table failed to intervene. *Id.* at 119. When the coworker filed an internal EEO complaint about the incident, LMC began an investigation. Mr. Cox initially refused to cooperate, but spoke with the investigator in August and September 2010. During the interviews Mr. Cox compared himself to "Frankenstein," *id.* at 143, 148, expressed frustration, and stated that he was undergoing counseling.

In August 2010, LMC managers met with Mr. Cox and warned him that failure to enter his objectives would result in charges of insubordination. He refused to comply and was placed on a PIP in September 2010. The PIP required that Mr. Cox, among other things, enter his flow-down objectives and attend scheduled meetings. LMC warned him that failure to comply with the PIP would be considered insubordination, "and that termination would be next." *Id.* at 166. Mr. Cox refused to sign the PIP. In his deposition he stated that a PIP is a tool used by management

to "disgrace [an employee]," and he did not want "someone else to come and define [him]," *id.* at 83.

LMC's EEO investigator reached out to Mr. Cox to "inquire if everything was 'okay.'" *Id.* at 150. She reported that he was angry and that he said: "I get nose bleeds"; "This thing is killing me inside"; "I'm talking to myself"; "One of these days, they will find me slumped over at my desk"; "A dog that has been beaten repeatedly will turn even on a good master"; and "Every metal has a breaking point." *Id.* at 151-52. Mr. Cox contests having made most of these statements, but he admitted at his deposition that he did make comments about "[e]very metal [having] a breaking point" and "an abused dog," *id.* at 85. Following her conversation with Mr. Cox, the EEO investigator alerted LMC's Case Management Team, which deals with at-risk employees, that he "was having some health issues and he appeared angry." *Id.* at 127.

On October 7, 2010, management met with Mr. Cox to provide him the opportunity to acknowledge the PIP and comply with its requirements. He refused. According to Mr. Cox, "[he] refused to enter management flow downs because [he] did not believe they were [his] objectives." *Id.*, Vol. II at 250. LMC management then began an investigation into allegations of insubordination against Mr. Cox. He was not notified of the investigation.

On October 8, Mr. Cox approached management and sought "help with documenting his flow-down performance management objectives." *Id.*, Vol. I at 192.

He "was respectful and engaged during his conversation." *Id.* But later that day, apparently before any objectives were inputted, LMC placed him on paid administrative leave pending a risk assessment of his comments and behavior. Dr. John Nicoletti conducted the assessment and concluded that there was insufficient data indicating that Mr. Cox was a threat to himself or others. But Dr. Nicoletti did conclude that "Mr. Cox has engaged in behaviors that have created Social and Psychological Disruption." *Id.* at 215.

On November 4, 2010, LMC issued a revised PIP for Mr. Cox and established Return to Work Expectations (RTWE) that were derived from Dr. Nicoletti's assessment. Despite being warned that "[f]ailure to sign, acknowledge or comply with the revised PIP will result in disciplinary action, up to and including termination," *id*. at 177, Mr. Cox refused to acknowledge or sign it. The following day, LMC suspended him with pay and informed him for the first time that he was under investigation.

LMC's investigation focused on four allegations of insubordination: (1) failure to input flow-down objectives; (2) refusal to sign the September 24, 2010, PIP; (3) refusal to respectfully discuss performance issues with managers; and (4) refusal to sign or acknowledge the revised PIP and comply with the RTWE. The investigator substantiated all but the first allegation, and forwarded the results to LMC's Administrative Review Committee (ARC). The ARC overruled the investigator's finding regarding the first allegation of insubordination, determined

- 5 -

that all allegations were substantiated, and recommended termination. LMC's Executive Review Committee (ERC) concurred with the ARC.

On December 3, 2010, LMC terminated Mr. Cox. He appealed his termination, arguing that he had never been given the opportunity to address the allegations against him. But despite several requests from LMC for documentation in support of his appeal, Mr. Cox did not respond. LMC denied the appeal on January 12, 2011.

Cox sued LMC, alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. The district court granted LMC's motion for summary judgment, prompting this appeal.

## DISCUSSION

### I. Summary Judgment Standard of Review

We review the district court's summary judgment order de novo, applying the same standards that the district court should have applied. *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting the analysis, we "view[ ] all facts [and evidence] in the light most favorable to the party opposing summary judgment." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

## II. Discriminatory Discharge & Retaliation

Mr. Cox claims that he was fired (1) because of his race and (2) in retaliation for complaining about being called a bug and for giving a statement about that incident. To show discriminatory discharge and retaliation, he relies on the familiar three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) ("A plaintiff may prove violation of Title VII or 42 U.S.C. § 1981—the standards are the same—either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas* . . . ." (citations omitted)).

Under the framework, if the plaintiff can show a prima facie case of discrimination, "[t]he burden then shifts to the [employer] to produce a legitimate, non-discriminatory reason for the adverse employment action. If the [employer] does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Similarly, if the plaintiff establishes a prima facie case of retaliation, the employer must offer a legitimate, nonretaliatory reason for its decision, which the plaintiff must then rebut by "show[ing] that the employer's reason is merely a pretext for retaliation." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

- 7 -

LMC does not dispute that Mr. Cox has made prima facie cases of discrimination and retaliation, and we assume, for the sake of argument, that he has. And for his part, Mr. Cox does not dispute the legitimacy of LMC's reasons for terminating him. Instead, he argues that those reasons are pretextual.

A party may show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (internal quotation marks omitted). Pretext may also be shown by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated. *See id.* But "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864-65 (10th Cir. 2007) (internal quotation marks omitted).

### A. Insubordination Allegations

To begin with, Mr. Cox argues that LMC has inconsistently described the insubordination allegations that led to his termination, and he concludes that the inconsistencies show pretext. His argument is based on a comparison of the reasons given for his termination in LMC's discovery admissions to the reasons given in LMC's investigation report. He cites LMC's admissions that he was fired "for a

pattern of insubordinat[e] behavior" that included "failure [to] comply with the [PMP]"; "fail[ure] to acknowledge two [PIP] documents"; "fail[ure] to treat his leadership team with respect"; and "refus[al] to acknowledge and abide by [RTWE]." Aplt. App., Vol. II at 273. These are essentially the same reasons LMC has cited all along for why Mr. Cox was fired. Any perceived inconsistencies strike us as merely semantic, rather than substantive. We now address each reason in turn.

### 1. Failure to Input Flow-Down Objectives

Mr. Cox contends that his willingness on October 8 to input his flow-down objectives shows that LMC's reason for discharging him was pretextual. He also points out that LMC's investigator found that this ground of insubordination was unsubstantiated because of his willingness to input the objectives.

We are not persuaded. Despite numerous requests from management, Mr. Cox refused to input his flow-down objectives for nearly 18 months. He even denied that they were his objectives. He finally expressed a willingness to input the 2010 objectives only after he was placed on a PIP and threatened with termination. Although LMC's investigator found no insubordination on this ground, Mr. Cox has not shown that the ARC and ERC were bound by the investigator's conclusions regarding insubordinate behavior. And the finding by the ARC and ERC is almost compelled by the record. Mr. Cox has failed to produce evidence that LMC's reliance on his failure to input his flow-down objectives was not in good faith.

### 2. Refusal to Acknowledge PIP Documents

Mr. Cox argues that because "there is no policy requiring that an employee acknowledge a PIP," LMC's reliance on his failure to acknowledge the revised PIP is pretextual. Aplt. Opening Br. at 36. Further, he asserts that he was not told to acknowledge the initial PIP.

Mr. Cox's argument regarding the initial PIP is, at best, a mere quibble. A PIP is a Personal Improvement Plan. No reasonable person could think that it was anything other than a directive to perform what is set forth in the plan. Mr. Cox refused to sign it and otherwise conveyed that he did not feel bound to follow it. Whether one characterizes his conduct as failure to "acknowledge" the PIP or uses other language, there is no question that he was expressing disobedience to his superiors. Mr. Cox provides no reason to believe that LMC's reliance on his response to the PIP as a ground for discipline was pretextual.

As for the revised PIP, Mr. Cox testified at his deposition that he refused to sign or acknowledge it. But he asserts that his testimony was mistaken and that his affidavit opposing summary judgment corrects his mistake by stating that he refused only to *sign* the revised PIP. The district court addressed these assertions, and rejected Mr. Cox's contrary affidavit statement as an attempt to create a sham fact issue. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an

affidavit contradicting his own prior testimony."). Mr. Cox does not address *Franks*. Nor does he provide any discussion that would support using his affidavit testimony over his earlier deposition testimony. We conclude that Mr. Cox has failed to provide evidence of pretext regarding his failure to acknowledge a PIP.

### 3. Failure to Respect Management

Mr. Cox argues that a reasonable factfinder would determine that he was not disrespectful to his supervisors. He relies on his deposition testimony contesting management's view of his behavior and attitude at work. It appears undisputed, however, that on at least one occasion, Mr. Cox acted disrespectfully by wearing earphones during a meeting and refusing to sit down. Further, Dr. Nicoletti determined that Mr. Cox had engaged in disruptive behaviors.

Even if Mr. Cox did not believe that he had any behavior and attitude problems at work, "[i]t is the manager's perception of the employee's performance that is relevant, not [the employee's] subjective evaluation of [his] own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996). There is no reason in this record to believe that management did not sincerely believe that Mr. Cox was disrespectful.

### 4. Failure to Comply with the RTWE

The RTWE required Mr. Cox to, among other things, "acknowledge and sign the revised [PIP] dated November 2, 2010." Aplt. App., Vol. I at 176. Mr. Cox argues that pretext is shown by the fact that the date of the revised PIP given to him

was November 4, whereas the RTWE listed the date of the revised PIP as November 2. He appears to conclude that because he did not refuse to acknowledge or sign a November 2 PIP, he could not have been faulted for failing to comply with the RTWE. But Mr. Cox has offered nothing to suggest that the discrepancy in dates is anything other than a clerical error. An employer's mistaken belief "is not necessarily pretextual." *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1322 n.12 (10th Cir. 1992). We conclude that the discrepancy in dates is essentially irrelevant. The undisputed fact remains that Mr. Cox failed to comply with the RTWE's requirement that he acknowledge and sign the revised PIP.

We note that Mr. Cox asserts that "[w]here one of the stated reasons for termination predominates over the others, demonstrating that reason to be pretextual is enough to avoid summary judgment." Aplt. Opening Br. at 49. But he concedes that LMC viewed "the four allegations of insubordination [as] equal with no allegation more serious than the other." *Id.* at 45-46. In any event, we have determined that he has failed to raise an issue of fact regarding any of the four allegations.

### B. LMC's Internal Policy

Mr. Cox argues that LMC's investigation of the four insubordination allegations is evidence of pretext because LMC failed to follow its internal policy concerning investigations. LMC requires that an employee who is accused of wrongdoing be notified of the allegations, given an opportunity to provide his

- 12 -

account of the events to the investigator, and given "an opportunity to submit a written statement before the case is referred to the ARC for disposition." Aplt. App., Vol. II at 294. It is undisputed that LMC did not notify Mr. Cox that he was under investigation until November 5, 2010, and it did not seek his account of the allegations until after he was terminated and had requested the opportunity to address the allegations.

Nevertheless, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (ellipsis and internal quotation marks omitted). "[F]or an inference of pretext to arise on the basis of a procedural irregularity, there must be some evidence that the irregularity directly and uniquely disadvantaged a minority employee." *Conroy*, 707 F.3d at 1176 (ellipsis and internal quotation marks omitted). Mr. Cox has failed to identify any evidence to show how LMC's deviation from its investigations policy detrimentally affected him. Indeed, when he appealed his termination and sought to address the insubordination allegations, he failed to provide any documentation despite LMC's repeated requests.

Mr. Cox also attempts to demonstrate pretext by showing that LMC treated two coworkers more favorably by affording them an opportunity to respond to charges against them. But Mr. Cox has not shown how those coworkers were similarly situated.

- 13 -

> Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees. Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant.

*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citations and internal quotation marks omitted). And although Mr. Cox made this argument in the district court, he did not mention the second coworker. Consequently, his argument is waived as to that coworker. *See Tele-Commc'ns, Inc., v. Comm'r,* 104 F.3d 1229, 1232 (10th Cir. 1997) (an appellate court will not consider an issue raised for first time on appeal, particularly when dealing with appeal from the grant of summary judgment).

### C. Date on Termination Recommendation

Finally, we reject Mr. Cox's attempt to show pretext by pointing out that the ARC's termination recommendation bears an "8/18/10" date. Aplt. App., Vol. I at 178. According to Mr. Cox, that date is significant because it shows that the ARC decided to recommend termination even before the investigation began on October 7, 2010. It is clear, however, that the "8/18/10" date is incorrect. Indeed, the ARC's recommendation discusses events that occurred well *after* the August 18 date. Moreover, the LMC employee who conducted the investigation testified that the date

- 14 -

on the ARC's recommendation should have been "November 18, 2010," rather than "8/18/10." *Id.*, Vol. II at 265.

The district court correctly ruled that Mr. Cox had failed to produce adequate evidence of pretext.

## CONCLUSION

The judgment of the district court is affirmed.

                                  Entered for the Court


                                  Harris L Hartz
                                  Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| Elisabeth A. Shumaker | November 20, 2013 | Douglas E. Cressler |
| Clerk of Court | | Chief Deputy Clerk |

Mr. Nelson George Alston
Alston Law Firm
2851 South Parker Road, Suite 630
Denver, CO 80293

**RE:** **13-1038, Cox v. Lockheed Martin Corporation**
Dist/Ag docket: 1:11-CV-01479-PAB-BNB

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: David D. Powell Jr.
     Austin Evans Smith

EAS/kf

2